UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

UNITED STATES OF AMERICA

v.                                         Case Nos.:   5:14cr28/RH/CJK
                                                        5:16cv219/RH/CJK
DUSTI NICOLE BROXON
_____/

## REPORT AND RECOMMENDATION

Defendant Dusti Nicole Broxon has moved for relief from her federal sentence by filing a "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence." (ECF No. 284). The Government filed a response (ECF No. 296) and Defendant filed a reply. (ECF No. 297). The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. See N.D. Fla. Loc. R. 72.2; see also 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b). The court recommends that the § 2255 motion be denied without an evidentiary hearing. See Rules Governing Section 2255 Cases 8(a) and (b).

## PROCEDURAL BACKGROUND

On October 8, 2014, Dusti Nicole Broxon was charged in two counts of a four count indictment with conspiracy to possess with intent to distribute fifty (50) grams or more of methamphetamine, its salts, isomers and salts of its isomers ("Count One") and possession with intent to distribute fifty (50) grams or more of methamphetamine, its salts, isomers and salts of its isomers on a date certain ("Count Four").   (ECF No. 27.)

On November 13, 2014, Broxon entered a guilty plea pursuant to a written plea agreement and statement of facts with the assistance of appointed counsel Walter Brooks Smith.   (ECF Nos. 84-86.)   Broxon's Presentence Investigation Report ("PSR") calculated her base offense level at 36 based on the quantity and purity of the methamphetamine involved in the offense conduct.   (ECF No. 142, PSR ¶ 29.)   After application of a three-level acceptance of responsibility adjustment, her total offense level was 33.   With a criminal history category of II, the applicable guidelines range was 151 to 188 months.   (PSR ¶ 43, 71.)

The court sentenced Broxon to concurrent terms of 151 months' imprisonment.   It ordered that the terms be served consecutively to any sentence

that might to imposed in Bay County Circuit Court Docket Number 14-CF-2485.
(ECF No. 168; ECF No. 197.)

Broxon appealed, contending that the district court committed clear error in
calculating the quantity of methamphetamine attributed to her and in failing to credit
her with a minor role adjustment.    (ECF No. 267.)    The Eleventh Circuit found no
error and affirmed.    The Supreme Court denied her petition for a writ of certiorari.
(ECF No. 281.)

In the present motion, Broxon raises three grounds for relief.    She contends
her plea was the result of "coercion," that counsel failed to secure a minor role
adjustment, and that counsel failed to raise the minor role adjustment on appeal.
The Government opposes the motion.

ANALYSIS

General Standard of Review

"Section 2255 does not provide a remedy for every alleged error in conviction
and sentencing."    *Spencer v. United States*, 773 F. 3d 1132, 1138 (11th Cir. 2014).
Collateral review is not a substitute for direct appeal, and therefore the grounds for
collateral attack on final judgments pursuant to § 2255 are extremely limited.    A
prisoner is entitled to relief under section 2255 if the court imposed a sentence that

(1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.    *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).    "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"    *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).    The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides it must be shown the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a § 2255 motion which have been resolved on direct appeal.    *Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014); *Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994).    Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under § 2255.    *Nyhuis*, 211 F.3d at 1343 (quotation

omitted).    Broad discretion is afforded a court's determination of whether a particular claim has been previously raised.    *Sanders v. United States*, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Because a motion to vacate under § 2255 is not a substitute for direct appeal, issues which could have been raised on direct appeal are generally not actionable in a § 2255 motion and will be considered procedurally barred.    *Lynn*, 365 F.3d at 1234–35; *Bousley v. United States*, 523 U.S. 614, 621 (1998); *McKay v. United States*, 657 F.3d 1190, 1195 (11th Cir. 2011).    An issue is "'available' on direct appeal when its merits can be reviewed without further factual development." *Lynn*, 365 F.3d at 1232 n.14 (quoting *Mills*, 36 F.3d at 1055).    Absent a showing the ground of error was unavailable on direct appeal, a court may not consider the ground in a § 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent."    *Lynn*, 365 F.3d at 1234; *Bousley*, 523 U.S. at 622 (citations omitted).    To show cause for procedural default, a defendant must show "some objective factor external to the defense prevented

[him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." *Lynn*, 365 F.3d at 1235. A meritorious claim of ineffective assistance of counsel can constitute cause. *See Nyhuis*, 211 F.3d at 1344.

Ineffective assistance of counsel claims generally are not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States*, 538 U.S. 500, 503 (2003); *see also United States v. Franklin*, 694 F.3d 1, 8 (11th Cir. 2012); *United States v. Campo*, 840 F.3d 1249, 1257 n.5 (11th Cir. 2016). To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

*Strickland*'s two-part test also applies to guilty pleas. *Lafler v. Cooper*, 566 U.S. 156, 162-63 (2012) (citing *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)). A defendant will be required to show that but for counsel's errors, she would not have pleaded guilty and would have instead insisted on proceeding to trial. *Id.* at 163 (*quoting Hill*, 474 U.S. at 59). A defendant must "convince the court that a

decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).

In applying *Strickland*, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs. *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013); *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007). Reviewing courts are to examine counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Hammond v. Hall*, 586 F.3d 1289, 1324 (11th Cir. 2009) (*quoting Strickland*, 466 U.S. at 689); *see also Chandler v. United States*, 218 F.3d 1305, 1315‒16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct).

To establish prejudice, defendant must show that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (*quoting Strickland*). In the case of alleged sentencing errors, a defendant must demonstrate a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203–04 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.* at 203.

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012); *Garcia v. United States*, 456 F. App'x 804, 807 (11th Cir. 2012) (*citing Yeck v. Goodwin*, 985 F.2d 538, 542 (11th Cir. 1993)).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Chandler*, 218 F.3d at 1313.   This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted.   *Dingle*, 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000).   A defendant's belief that a certain course of action that counsel failed to take might have helped his case does not direct a finding that counsel was *constitutionally ineffective* under the standards set forth above.

An evidentiary hearing is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief."   *See* 28 U.S.C. § 2255(b); *Rosin*, 786 F.3d at 877; *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008).   Not every claim of ineffective assistance of counsel warrants an evidentiary hearing.   *Gordon*, 518 F.3d at 1301 (*citing Vick v. United States*, 730 F.2d 707, 708 (11th Cir. 1984)).   To be entitled to a hearing, a defendant must allege facts that, if true, would prove he is entitled to relief.   *See Hernandez v. United States*, 778 F.3d 1230, 1234 (11th Cir. 2015).   A hearing is not required on

Case Nos.: 5:14cr28/RH/CJK; 5:16cv219/RH/CJK

frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *See Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (explaining that "a district court need not hold a hearing if the allegations [in a § 2255 motion] are . . . based upon unsupported generalizations") (internal quotation marks omitted); *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004). Even affidavits that amount to nothing more than conclusory allegations do not warrant a hearing. *Lynn*, 365 F.3d at 1239. Finally, disputes involving purely legal issues can be resolved by the court without a hearing.

Ground One

Broxon first claims counsel was constitutionally ineffective, and her plea was the result of "coercion." (ECF No. 284 at 4.) She says counsel did not explain how "relevant conduct" would impact her sentence before her change of plea hearing. In some respects this appears to be another way of attacking the court's drug quantity determination, in that Broxon is basically stating that had she known she could have been held accountable for more than the single kilogram of methamphetamine, she would not have entered a guilty plea. She also asserts that counsel "provided her a specific amount of months" so she "believed that she had a binding plea agreement." (ECF No. 284 at 4.) Broxon maintains counsel told her

Case Nos.: 5:14cr28/RH/CJK; 5:16cv219/RH/CJK

the applicable range was 97 to 121 months, and that she would be sentenced to ten years, unless she "debriefed," in which case she would be sentenced to seven and a half years.    (ECF No. 285 at 9.)

The written plea agreement expressly provided that Broxon faced a sentence of "ten (10) years to life years in prison," and additionally that "any prediction of the sentence that may be imposed is not a guarantee or binding promise."    (ECF No. 84 at 2, 4.)    By signing the agreement, Broxon indicated her understanding that "either party may offer additional evidence relevant to sentencing issues" and that the court was "not limited to consideration of the facts and events provided by the parties."    (ECF No. 84 at 5.)    Although the agreement does not use the phrase "relevant conduct" it clearly is encompassed therein.    Additionally, the agreement stated that adverse rulings or a sentence greater than anticipated would not be grounds for Broxon to withdraw her plea.    (*Id*.)

During rearraignment, the court reiterated the possible penalties Broxon faced and explained she could not withdraw her guilty plea if she was dissatisfied with her sentence or if it was different than what her attorney predicted. (ECF No. 200 at 7, 11-13.)    Broxon indicated her assent.    Under oath, she denied the existence of

undisclosed promises about the resolution of her case, and both Mr. Smith and

AUSA Risinger provided the same assurance.    (*Id.* at 14-15.)

A defendant's statements during a Rule 11 colloquy as well as any findings

made by the judge accepting the pleas constitute a formidable barrier in any

subsequent collateral proceedings.    *Blackledge v. Allison,* 431 U.S. 63, 73−74

(1977); *Winthrop-Redin v. United States*, 767 F.3d 1210 (11th Cir. 2014) (*citing*

*Blackledge*).    Solemn declarations, such as during a plea colloquy, made under oath

in open court carry a strong presumption of verity.    *Blackledge*, 431 U.S. at 73−74;

*Connolly v. United States*, 568 F. App'x 770, 771 (11th Cir. 2014) (*citing*

*Blackledge*); *Garces v. U.S. Att'y Gen.*, 611 F.3d 1337, 1349 (11th Cir. 2010) (*citing*

*Blackledge*).    They are presumptively trustworthy and are considered conclusive

absent compelling evidence showing otherwise; the subsequent presentation of

conclusory and contradictory allegations does not suffice.    *Blackledge*, 431 U.S. at

73−74; *Winthrop-Redin*, 767 F.3d at 1216.    In fact, such allegations are subject to

summary dismissal.    *Winthrop-Redin*, 767 F.3d at 1216 (*citing Blackledge*, 431

U.S. at 74).    A defendant "bears a heavy burden to show [her] statements [under

oath] were false."    *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988);

*United States v. Green*, 275 F. App'x 941 (11th Cir. 2008).

Broxon makes no attempt, either in her amended motion and supporting memorandum or her reply, to disavow the sworn statements she made during the rearraignment proceeding.   Considering her decision to cooperate with law enforcement at the time of her arrest, her claim that she would have proceeded to trial carries more than a whiff of incredulity.    Of course, had she proceeded to trial (and been convicted), the court still could have used relevant conduct in determining the appropriate sentence.   Assuming for sake of argument that Broxon was held accountable for only one kilo of methamphetamine, after a conviction at trial, her total offense level, and thus her sentencing exposure, would have been higher because she would not have received a three-level adjustment for acceptance of responsibility.   Broxon has not shown she was prejudiced or that she is entitled to relief.

Also, in Ground One, Broxon faults counsel for failing to challenge the relevant conduct evidence that came from co-conspirator John Matthew Love at sentencing.   Broxon contends she could have put forth evidence demonstrating that at the time Love claimed to have sold her drugs, she was "in an entirely different place."   (ECF No. 285 at 10.)   Had counsel done this, she claims, the court would

have found her accountable for only one kilogram rather than 1.5 kilograms of methamphetamine and her base offense level would have been two levels lower.

Love testified that on the date of his arrest, September 17, 2014, he was in communication with Broxon because she wanted to purchase "one, possibly two" kilograms of methamphetamines.   (ECF No. 197 at 5.)   Love was with DEA Agent Lammers, focusing on his source of supply in Atlanta when Broxon contacted Love via text.   Broxon did not know Love had been arrested and was cooperating with the DEA.   (*Id.* at 6.)   When Agent Lammers asked Love about Broxon, Love admitted to Lammers that he and Broxon "had had business together before," meaning that Love had sold Broxon methamphetamine in the past.   (*Id.* at 6-7.)   A meeting was arranged, and later that evening, Broxon was arrested coming to Love's house with the intent to purchase a kilogram of methamphetamine.   (*Id.* at 7.) Love testified that six to eight weeks before his arrest he had sold Broxon approximately a pound of methamphetamine in Panama City, and about two to three weeks after that he had sold her another kilogram of methamphetamine in Montgomery, Alabama, where Broxon was buying a car, for a total of two and a half kilograms of methamphetamine.   (*Id.* at 7-13.)

On cross-examination, defense counsel Smith questioned Love about why, if he was trying to cooperate, he had not immediately given the DEA information about the other times he said he sold methamphetamine to Broxon.    (ECF No. 197 at 15-18.)    On re-direct, in response to the Government's follow-up inquiry, Love explained that on the date of his arrest the DEA was looking for someone who could purchase methamphetamine from him "right then."    He thus mentioned only his "regular" weekly customers and not Broxon, who had made only two prior purchases.    (*Id*. at 18-19.)    It was the happenstance Broxon texted Love, while in the presence of the DEA agents, that her name came up.

Agent Lammers of the DEA also testified at sentencing.    Lammers explained that Broxon had texted Love while the DEA was focused on Love's source of supply in Atlanta, so they did not focus at the time on a full debriefing about previous dealings with Broxon.    (ECF No. 197 at 19-21.)    Lammers stated that the DEA confirmed that Broxon bought a car in Alabama around the time frame identified by Love, which corroborated Love's story.    (*Id*. at 22.)    Lammers also explained that errors in his initial report, which he had created when both he and Love were sleep-deprived, were corrected during an interview with Love approximately a week before sentencing.

Case Nos.: 5:14cr28/RH/CJK; 5:16cv219/RH/CJK

Agent Lammers testified that while Broxon was in DEA custody, she agreed to cooperate.   (ECF No. 197 at 23-24.)   First, she unsuccessfully attempted to make recorded calls to the individual for whom she was allegedly purchasing the methamphetamine. Then she recorded an incoming call from an individual who sought to purchase $700 in methamphetamine directly from her.   No other witnesses testified.

With respect to the minor role adjustment, the Government argued that the evidence showed that not only was Broxon the "middleman" in large scale drug transaction, but that she also had some of her own customers, thus disqualifying her from receiving a minor role adjustment.   (ECF No. 197 at 30.)   The defense argued, in turn, that Love's testimony was not credible, that only one kilogram of methamphetamine should be attributed to her, and that a single purchase in a 20 to 40 kilogram conspiracy rendered her participation "minor."   The court overruled the objection to the lack of minor role adjustment.   (*Id*. at 33.)

Broxon's assertion in the instant motion that she "could have put forth evidence such as debit card statements and receipts and cell phone records which would have demonstrated that at the times Matthew Love claimed to have sold Ms. Broxson drugs, that she was in an entirely different place" (ECF No. 285 at 10) is

conclusory and offers no basis for relief.    Love's testimony was less than precise,

as is often the case with co-conspirators, but nonetheless corroborated.    Assessment

of Love's credibility was for the sentencing judge.    And, as noted by the Eleventh

Circuit, even if Broxon could have disproven one of the two sales to which Love

testified, the base offense level would not have changed.    (ECF No. 267 at 3.)

Broxon has not shown she was prejudiced by any alleged deficiency in counsel's

performance.

Grounds Two and Three

Broxon claims in Grounds Two and Three that counsel's performance was

constitutionally deficient because he did not "raise the most appropriate arguments"

in support of the request for a minor role adjustment both at sentencing and on

appeal.    (ECF No. 285 at 13, 17.)

At the beginning of the sentencing proceeding, lawyer Smith reiterated the

defense position that Broxon should receive a minor role adjustment because she

had made only one attempt at a single kilogram purchase.    (ECF No. at 3.)

Broxon now asserts counsel should have brought up other factors identified in the

guidelines including the degree to which she understood the scope and structure of

the criminal activity, the degree to which she participated in planning or organizing

Case Nos.: 5:14cr28/RH/CJK; 5:16cv219/RH/CJK

the criminal activity, and the degree to which she exercised decision-making authority. (ECF No. 285 at 13, citing U.S.S.G. § 3B1.2 comment n.1(c).) Broxon notes that Love testified that he had brought approximately 20 kilograms of methamphetamine to Panama City, and she disavows any knowledge of, or involvement with, 19 of the 20 kilograms.

Broxon was not held accountable for these other 19 kilograms of methamphetamine. Her culpability was limited to the no more than 2.5 kilograms of methamphetamine Love testified she had purchased. Therefore, because she was not held accountable for the entire quantity of methamphetamine involved in the conspiracy, there was no basis for a minor role adjustment.[1] She did not have a "minor" role with respect to the drugs she actually purchased for resale. Broxon has not shown counsel's performance was deficient either at sentencing or on appeal.

The undersigned does not overlook Broxon's complaint that co-defendant Love had distributed 20 kilograms of methamphetamine but his sentence was less than hers. (ECF No. 297 at 6.) Dissatisfaction with her sentence in comparison with that of her co-defendants does not establish a constitutional basis for relief.

---

[1] Had Broxon been held accountable for 20 kilograms of methamphetamine, with a base offense level of 38 pursuant to U.S.S.G. § 2D1.1(c)(1), after a two-level minor role adjustment pursuant to U.S.S.G. § 3B1.2(b), her adjusted and total offense levels would not have changed.

The base offense level for 20 kilograms of methamphetamine is only two levels higher than the base offense level for 1.5 kilograms of methamphetamine.   *See* U.S.S.G. § 2D1.1(c)(1) and (2).   Myriad other factors came into play in co-defendant Love's case, such as his cooperation with law enforcement and his testimony at Broxon's sentencing proceeding, which influenced his ultimate sentence.   This is an example of individualized sentencing and provides no basis for relief.

Conclusion

For the foregoing reasons, Broxon has not shown any claim raised in her amended motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 has merit.   Nor has she shown an evidentiary hearing is warranted. Therefore, Broxon's motion should be denied in its entirety.

Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. §

2253(c)(2)."   A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.   Rule 11(b), Rules Governing Section 2255 Cases.

After review of the record, the court finds no substantial showing of the denial of a constitutional right.   28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."   If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully RECOMMENDED:

1.   The amended motion to vacate, set aside, or correct sentence (ECF No. 284) be DENIED.

2.   A certificate of appealability be DENIED.

Case Nos.: 5:14cr28/RH/CJK; 5:16cv219/RH/CJK

At Pensacola, Florida, this 18th day of October, 2018.


/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.   Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.   A copy of objections shall be served upon all other parties.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.

Case Nos.: 5:14cr28/RH/CJK; 5:16cv219/RH/CJK